IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT J. WRIGHT,

                    Plaintiff,

v.

SHAUN FUNK, JOSHUA KOLBO, and RYAN NEIS,

                    Defendants.[1]

OPINION and ORDER

19-cv-37-jdp

---

Pro se plaintiff and prisoner Robert J. Wright is proceeding on two claims related to events at the Wisconsin Secure Program Facility in December 2018: (1) defendants Shaun Funk and Joshua Kolbo (both correctional officers) failed to prevent him from attempting to overdose on over-the-counter pain relievers, in violation of the Eighth Amendment; (2) defendant Ryan Neis (also a correctional officer) gave him a conduct report because Wright told Neis that he was going to file a grievance and lawsuit against Funk and Kolbo, in violation of the First Amendment.

Defendants move for summary judgment on both claims. Dkt. 28. Wright's first claim fails because the undisputed facts show that Funk and Kolbo didn't have the notice required under circuit law to trigger a duty to act. Wright's second claim fails because the conduct report issued by Neis was supported by a legitimate reason. So I will grant defendants' motion for summary judgment and dismiss both claims.

---

[1] I have amended the caption to reflect the full name of defendant Neis, as reflected in his answer. Dkt. 19.

ANALYSIS

A. Failure to protect from self-harm

Wright first contends that Funk and Kolbo violated the Eighth Amendment by failing to intervene when he told both of them that he was "having suicidal thoughts" and also told Kolbo that he wanted to see someone from psychological services. Dkt. 38, ¶¶ 2–4.[2] According to Wright, Funk told him to "hold on a minute," but Funk never came to Wright's cell; Kolbo told Wright that no one from psychological services was working and refused to talk to Wright any further. *Id.*

More than four hours later, Wright says that he contacted Kolbo using the intercom "and told him that I just took around 50 pills." *Id.*, ¶ 5.[3] Wright doesn't say in his declaration what the pills were, but he says in his complaint that they were ibuprofen and acetaminophen, Dkt. 1, ¶ 16, which is consistent with what defendants say he told them. After Wright reported that he had swallowed the pills, he was taken to the hospital.

Defendants dispute much of Wright's account. But I will assume for the purpose of defendants' motion for summary judgment that the events occurred as Wright says. *See Scott v. Harris,* 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." (internal quotation marks and alterations omitted)).

---

[2] Wright doesn't say why he was upset. According to Kolbo, Wright told him that it was because he had not received his nutrition shake when he was supposed to. Dkt. 32, ¶ 6. Wright denies that he told Kolbo this, Dkt. 38, ¶ 6, but he doesn't provide any other context.

[3] Wright doesn't say in his declaration what happened during the four hours in between his conversations with Kolbo. He also doesn't say that he actually *swallowed* 50 pills, only that he told Kolbo that he did so. But defendants don't raise that issue in their motion, and I am resolving the claim on other grounds, so I need not address Wright's omission.

To prevail on this claim, Wright must show three things: (1) at the time he spoke to defendants, there was a strong likelihood that he would seriously harm himself in the near future; (2) defendants knew of that strong likelihood; and (3) defendants consciously failed to take reasonable measures to prevent him from harming himself. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012). Defendants challenge Wright's ability to satisfy the first two elements.

Defendants' first contention is that Wright can't show that he was actually subjected to a risk of harm. Defendants acknowledge that Wright's hospital lab tests showed that his acetaminophen plasma concentration (APC) was elevated. Zero to 30 mcg/mL is normal, but Wright's concentration was 57mcg/mL the first time he was tested (approximately an hour after he said he took the pills), and 37mcg/mL the second time he was tested (four hours later). Dkt. 35-1, at 10, 12. Defendants cite the declaration of their expert, Daryl Daane, the director of Central Pharmacy Service at the Wisconsin Department of Corrections, who says that someone with those blood levels is not at risk of liver damage. Dkt. 27, ¶ 16. Daane says that there would be a risk of toxicity if a person's APC were about 110 mcg/mL or higher five-and-a-half hours after ingestion. *Id.* From this, defendants say that Wright was never in danger, so he can't show that there was a strong likelihood of serious harm.

Wright doesn't cite any medical records that undermine Daane's opinion, and he doesn't allege that he received any treatment at the hospital, other than the blood tests. Instead, he relies on one paragraph in his declaration: "Before I was taken to the hospital, I experienced stomach pain, migrain[e] headache, drowsiness, and physical weakness; at the hospital I vomited once and had [a] diarrhea bowel movement, and lost conscious[ness] for awhile." Dkt. 38, ¶ 9. Wright's testimony is vague, and he doesn't cite any hospital records or

3

witness statements that corroborate what he says. Under similar circumstances, this court has declined to credit conclusory statements that are inconsistent with the medical evidence. *See Davis v. Gee*, No. 14-cv-617-wmc, 2017 WL 2880869, at *4–6 (W.D. Wis. July 6, 2017). But Daane doesn't address Wright's alleged symptoms in his declaration and defendants don't discuss them in their brief. I can resolve this claim on other grounds, so I need not decide whether Wright's allegations create a genuine issue of material fact on the question whether he was at risk of serious harm.

Defendants' second contention is that Wright hasn't presented evidence that defendants knew of a strong likelihood that Wright would seriously harm himself. If I were considering this claim a year ago, I likely would deny summary judgment based on Wright's allegations that he told defendants that he was having "suicidal thoughts" and wanted to see someone from psychological services. *See Clark v. Heinen,* No. 17-cv-393-bbc, 2018 WL 4518030, at *1–2 (W.D. Wis. Sept. 20, 2018) (denying summary judgment on prisoner's Eighth Amendment claim that correctional officers failed to help him when he told them he was experiencing suicidal ideations and needed to be placed in observation).

But *Johnson v. Garant*, 786 F. App'x 609 (7th Cir. 2019), forecloses Wright's claim. In that case, correctional officers failed to take action when the prisoner told them that "he felt suicidal and wanted to speak to a crisis counselor." *Id.* at 610. The court of appeals held that the prisoner's statements failed to create a genuine issue of material fact on the question whether the defendants were aware of a risk because the statements "lacked any indication that [the prisoner] may have 'imminently' sought to have harmed himself." *Id.* To meet that standard, a prisoner must do "more than tell guards that he planned to commit suicide." *Id.*

Wright's alleged statements in this case are virtually identical to those in *Johnson*. And Wright doesn't point to any evidence other than his statements that would have given Funk and Kolbo notice that he was on the verge of harming himself, such as knowledge of any previous acts of self-harm. He submitted several declarations of other prisoners, Dkts. 39–43, but most of them simply repeat what Wright alleges in his declaration. One prisoner, Robbie Fields, includes the additional allegation that Fields also told Kolbo that he believed that Wright was suicidal, Dkt. 39, ¶ 9, but that adds nothing because Fields's only basis for saying that was Wright's earlier statement to Funk and Kolbo.

*Johnson* isn't a precedential opinion and it was decided after the relevant events in this case, but Wright cites no other cases that are more on point or that are inconsistent with *Johnson*. Even if *Johnson* isn't controlling, it is strong evidence that it wasn't clearly established in December 2018 that defendants' conduct violated the Eighth Amendment. So defendants are entitled to qualified immunity. *See Locke v. Haessig*, 788 F.3d 662, 666 (7th Cir. 2015) ("The defense of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal quotation marks omitted)). Although defendants raised a qualified immunity defense in their answer and asked for qualified immunity in their summary judgment brief, Wright didn't respond to the argument in his opposition brief. So I will dismiss Wright's Eighth Amendment claim against Funk and Kolbo.

**B. Retaliation**

The day after Wright told staff that he had swallowed pills, Neis says that his supervisor directed him to check with the health services unit to find out whether "Wright had in fact

5

taken the medications he claimed to have taken." Dkt. 31, ¶ 14. Health services staff told Neis that Wright's "test levels were minimally elevated but not toxic." *Id.* As a result, Neis issued a conduct report to Wright for lying, misuse of medication, and disruptive conduct. A hearing officer (not a defendant) found that Wright violated each of the prison rules cited in the conduct report and disciplined Wright with placement in segregation for 90 days. Dkt. 31-2, at 1.

Wright doesn't dispute that Neis was directed by his supervisor to investigate Wright's situation or that health services staff told Neis that Wright's test results were only "minimally elevated." But Wright contends that Neis gave him a conduct report because Wright told Neis that he was going to file a grievance against Funk and Kolbo for ignoring him. According to Wright, after learning about Wright's plans to file a grievance, Neis said, "Well, if that's the approach you're gonna take, then I'm going to write you a conduct report." Dkt. 38, ¶ 8.

Generally, a retaliation claim has three elements: (1) the plaintiff was engaging in activity protected by the Constitution; (2) the defendant's conduct was sufficiently adverse to deter a person of "ordinary firmness" from engaging in the protected activity in the future; and (3) the defendant subjected the plaintiff to adverse treatment because of his constitutionally protected activity. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 866–67 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 555–56 (7th Cir. 2009). Defendants don't discuss any of these elements in their briefs, presumably because they believe that Wright has satisfied them for the purpose of summary judgment. A threat to file a grievance may be protected by the First Amendment, *see Ellis v. Schunk*, No. 16-cv-390-wmc, 2018 WL 2089352, at *1 (W.D. Wis. May 4, 2018); a conduct report that results in a placement in segregation can be an adverse action, *Jackson v. Thurmer*, 748 F. Supp. 2d 990,

6

1003 (W.D. Wis. 2010); and statements by the defendant essentially admitting to a retaliatory motive can be enough to show causation, *see Thomas v. Anderson*, 912 F.3d 971, 973–75 (7th Cir. 2018).

Defendants seek summary judgment on two other grounds. First, defendants ask the court to extend the holding of *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), to this case. In *Nieves*, the Court held that a claim for a retaliatory *arrest* is defeated by a showing that the officer had probable cause to arrest the suspect, unless there is evidence that similarly situated individuals were not arrested for similar conduct. *Id.* at 1727. Defendants say that prison discipline is similar to law enforcement, and that the same concerns that motivated the Court in *Nieves* apply here. If this court were to apply *Nieves*, defendants say, Wright's claim would fail because Neis had "probable cause" to believe that Wright had committed all the offenses charged in the conduct report based on the information from the health services unit.

This argument has some force, but defendants are directing their argument to the wrong court. *Nieves* didn't overrule any case law from this circuit regarding the legal standard for a retaliation claim in the prison context. And the court of appeals has yet to consider whether *Nieves* should be extended. So this court must follow the standard set forth by the court of appeals. If defendants want to change that standard, they must ask the court of appeals to do so. *Cf. Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Defendants' second argument is based on a similar idea, but this one has stronger footing in Seventh Circuit case law. Specifically, defendants say that the conduct report "served

7

a legitimate penological goal," so it doesn't matter what Wright's intent was when he issued the conduct report. Defendants say that the charge for lying was justified because the information from health services staff supported a reasonable belief that Wright took fewer pills than he said he did; the charge for disruptive conduct was justified because Wright's actions required staff to respond and take him to the hospital; and the charge for misuse of medication was justified because Wright admitted taking more than he should.

This argument is supported by *Brown v. Phillips*, which held that "it is irrelevant if [a prison employee] may have had a retaliatory motive" if the defendant's conduct "is supported by a legitimate reason." 801 F.3d 849, 855 (7th Cir. 2015) (citing *Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009), and *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)). Neis's conduct in this case meets that standard. Lying about an attempted suicide is a serious act of misconduct that prison officials have a legitimate interest in deterring. Such conduct allows a prisoner to manipulate staff when the prisoner doesn't get what he wants; it diverts significant resources away from the normal operations of the prison; and it can put the prisoner himself in danger if he miscalculates the dangerousness of his actions. So it would be reasonable for prison officials to discipline a prisoner who engaged in that conduct to deter both him and other prisoners from engaging in similar conduct in the future.

The wrinkle in this case is that Wright doesn't admit that he was lying about being suicidal. The question in *Brown* wasn't about disputed conduct underlying a prison discipline; it was about the legitimacy of a policy that the plaintiff alleged was enacted to retaliate against him for filing a lawsuit. But this court has applied *Brown* to prison disciplinary decisions in other cases. *See Nelson v. Stevens*, No. 18-cv-238-wmc, 2020 WL 2112270, at *17 (W.D. Wis. May 4, 2020). In *Nelson*, the court concluded that a retaliation claim failed because the

8

defendant (the officer who issued the conduct report) "had sufficient, objective information" that the prisoner had violated prison rules. *Id.* That is the situation in this case. The information that Neis received from health services staff was objective evidence supporting a reasonable belief that Wright had not taken a dangerous amount of medication as he alleged and that he was not in fact trying to harm himself.

*Brown* does not clearly answer the question whether its holding applies when the prisoner denies that he engaged in misconduct. But even if *Brown* leaves some room for doubt, that's enough for granting Neis qualified immunity, which gives "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Defendants raised a qualified immunity defense in their brief on this claim, but, again, Wright didn't respond to it. So I will dismiss this claim as well.

ORDER

IT IS ORDERED that the motion for summary judgment filed by Shaun Funk, Joshua Kolbo, and Ryan Neis, Dkt. 28, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered July 23, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge